Entered: March 13th, 2018
Signed: March 13th, 2018



**MICHELLE M. HARNER**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

|  |  |  |
|---|---|---|
| | * | |
| In re: | * | |
| | * | |
| Byung Mook Cho, | * | Case No. 17-22057-MMH |
| | * | |
| Debtor. | * | Chapter 11 |
| *　*　*　*　*　* | * | *　*　*　*　*　* |
| | * | |
| In re | * | Case No. 17-22058-MMH |
| | * | |
| The New Belvedere Cleaners, Inc., | * | Chapter 11 |
| | * | |
| Debtor. | * | Jointly Administered |
| *　*　*　*　*　* | * | *　*　*　*　*　* |

## <u>MEMORANDUM OPINION</u>

A debtor in possession may assume or reject an executory contract in a chapter 11 case.[1]

The U.S. Bankruptcy Code[2] does not define the term "executory contract," and courts often

struggle to determine executoriness under applicable case law. The dispute before the Court is no

exception—the primary issue concerns the characterization of a prepetition settlement agreement

as an executory contract, and the parties vehemently disagree regarding its executoriness.

Although the Debtors dispute in the first instance that they are bound by the settlement

---

[1] A debtor in possession, as the Plaintiff in this adversary proceeding, possesses powers similar to the bankruptcy trustee under section 1107 of the Bankruptcy Code. 11 U.S.C. § 1107.

[2] 11 U.S.C. §§ 101, et seq. (the "Code").

agreement, the record suggests otherwise, requiring the Court to determine whether the Debtors

may reject the settlement agreement as an executory contract under section 365 of the Code.

Whether a contract is executory depends on the facts of the particular matter, the

language of the subject agreement, and the consequences under applicable nonbankruptcy law of

either party ceasing to perform any ongoing or remaining obligations under the contract. Here,

the core purpose of the settlement agreement was to resolve the pending legal disputes between

the parties, providing certainty and finality to each affected party. In exchange for the transfer of

a certain business and a cash payment, the parties agreed to dismiss the litigation between them;

the non-debtor parties agreed to dismiss, and to take certain other action in, related litigation

involving a third party; and the parties agreed to refrain from disparaging each other and their

respective businesses. Considering the totality of the circumstances and the core purpose of the

settlement agreement, the Court determines that the settlement agreement is an executory

contract and subject to rejection in the Debtors' chapter 11 cases. Notably, because the Debtors

are seeking rejection, which simply constitutes a prepetition breach of the settlement agreement

under section 365(g) of the Code, the parties' respective rights may not differ significantly from

those available if the Court had found the prepetition settlement agreement to be non-executory

and the Debtors refused to perform. This question is not, however, currently before the Court.

Accordingly, for the reasons set forth below, the Court will grant the Motion and reserve

judgment on the consequences of the Debtors' rejection of the settlement agreement.

## I.        Relevant Background

Prior to the petition date in these chapter 11 cases, on or about December 28, 2015,

Chong Ok Lim and Young Jun Jun (the "Plaintiffs") filed a lawsuit against Byung Mook Cho

and The New Belvedere Cleaners, Inc. ("New Belvedere" and collectively with Mr. Cho, the

2

"Debtors"), the above-captioned debtors and debtors in possession, in the Circuit Court for Howard County, Maryland (the "State Court Action"). The State Court Action involved, among other things, allegations of fraud and fraudulent conveyance relating to the business of New Belvedere. November Hearing Transcript at 10, 14–16. On or about April 13, 2017, the Debtors and the Plaintiffs participated in a settlement conference before the Honorable Lynne Battaglia. That conference resulted in an oral settlement agreement that purported to resolve the pending disputes between the parties and that was subsequently memorialized in a written document (the "Settlement Agreement"). Pl. Ex. 8.

Mr. Cho would not sign the Settlement Agreement. Consequently, the Plaintiffs filed a Motion to Enforce Settlement Agreement (the "Motion to Enforce") in the state court. Pl. Ex. 1. The Honorable Dennis Sweeney conducted a hearing on the Motion to Enforce on June 29, 2017 (the "State Court Hearing"). At the State Court Hearing, the Plaintiffs requested an order enforcing the Settlement Agreement, and the Defendants argued that they should not be bound by, or required to sign, the Settlement Agreement. The parties presented evidence to support their respective positions. Judge Sweeney ultimately determined to enforce the Settlement Agreement. Pl. Ex. 2 at 19.

Mr. Cho still did not sign the Settlement Agreement. Accordingly, on July 24, 2017, the Plaintiffs filed a Petition for Show Cause for Constructive Civil Contempt ("Show Cause Petition"). Pl. Ex. 3. A hearing on the Show Cause Petition was set for September 12, 2017. That hearing did not go forward; it was stayed as a result of the filing of the Debtors' chapter 11 petitions on September 8, 2017.

Shortly after filing these cases, on September 13, 2017, each of the Debtors filed a Motion Pursuant to 11 U.S.C. § 365 to Reject Executory Contract (collectively, the "Motion")

[ECF 15 in Case No. 17-22057; ECF 12 in Case No. 17-22058]. By the Motion, the Debtors seek to reject the Settlement Agreement. The Plaintiffs filed an Objection to the Motion in each of these cases (collectively, the "Objection") [ECF 22 in Case No. 17-22057; ECF 14 in Case No. 17-22058].[3] The Court held a hearing on the Motion on November 21, 2017 (the "November Hearing"). The parties then submitted post-hearing briefs in December 2017 [ECF 45, 46], and offered closing arguments at a hearing before the Court on January 18, 2018 (the "January Hearing").

## II.    Jurisdiction and Legal Standards

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Local Rule 402 of the United States District Court for the District of Maryland. This proceeding is a "core proceeding" under 28 U.S.C. § 157(b)(2).

Section 365(a) of the Code provides that a trustee or debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). "A debtor may reject an executory contract if it is advantageous to the debtor to do so." *In re Auto Showcase of Laurel, LLC*, 2011 WL 4054839, at *5 (Bankr. D. Md. Sept. 12, 2011) (citing *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1046 (4th Cir. 1985)). Thus, a debtor in possession or the trustee must show that the proposed rejection of the executory contract or unexpired lease provides a benefit to, or eliminates burdensome obligations on, the estate. *See, e.g., In re Alpha Natural Resources, Inc.*, 555 B.R. 520, 530 (Bankr. E.D. Va. 2016).

A debtor in possession's decision to assume or reject an executory contract or unexpired lease is subject to a business judgment standard, and "should be 'accorded the deference

---

[3] Subsequent to these separate filings, the Court entered an Order Providing for Joint Administration of Cases 17-22057 and 17-22058 [ECF 16; amended at ECF 17].

mandated by the sound business judgment rule as generally applied by courts to discretionary actions or decisions of corporate directors.'" *Alpha Natural Resources*, 555 B.R. at 529–530 (quoting *Lubrizol*, 756 F.2d at 1046)). Courts generally refrain from second-guessing a debtor in possession's business judgment regarding a proposed assumption or rejection of an executory contract or unexpired lease. *See, e.g., Alpha Natural Resources*, 555 B.R. at 530 (noting deference by courts to a debtor in possession's business judgment "unless there is a showing of bad faith or gross abuse of discretion"). The rejection of an executory contract or unexpired lease that was not previously assumed in the case "constitutes a breach of such contract or lease … immediately before the date of the filing of the petition." 11 U.S.C. § 365(g)(1).

### III.    Analysis

The Debtors argue that they never signed the Settlement Agreement and that, even if they are bound by it, the Settlement Agreement is "onerous and burdensome" on their estates. Motion at 2. They also allege that the terms of the agreement cannot be completed as drafted. *Id.* Accordingly, the Debtors seek a determination that the Settlement Agreement either is not a contract, or that it is an executory contract subject to rejection under section 365 of the Code. The Plaintiffs, on the other hand, assert that the Settlement Agreement is enforceable and is not an executory contract for purposes of the Code. The Court considers each of the parties' respective arguments below.

### A.    The Existence of the Settlement Agreement

The Debtors and the Plaintiffs have been involved in litigation for several years. The genesis of this litigation appears to be a dry-cleaning business once owned by the Plaintiffs and now owned and operated by the Debtors. The Plaintiffs allege fraud and fraudulent conveyance claims against the Debtors with respect to the events leading up to the Debtors' ownership of the

business. Specifically, the Plaintiffs allege that, after they obtained a judgment against Hee Sook Paik, Ms. Paik and Mr. Cho "conspired to fraudulently convey the business" to Mr. Cho. Pl. Post-Hearing Brief [ECF 45] at 16. Mr. Cho denies these allegations. The Settlement Agreement purports to resolve those claims and the related disputes among the parties concerning the dry-cleaning business. Settlement Agreement, Pl. Ex. 8 ¶ E.

At the State Court Hearing to enforce the Settlement Agreement, the issue before the state court was whether Mr. Cho should be compelled to execute the Settlement Agreement. Judge Sweeney accepted evidence on this issue. Mr. Cho did not deny the existence of the Settlement Agreement. Pl. Ex. 2 at 10. Rather, Mr. Cho testified that, at some point after the parties' settlement conference, the Plaintiffs allegedly violated the non-disparagement provision of the Settlement Agreement, which upset Mr. Cho and caused him to change his mind as to the prudence of the Settlement Agreement. *Id*. at 11–14. As such, Mr. Cho did not execute the agreement or take any action under it. *Id.* Judge Sweeney ultimately concluded, based on the evidence presented, that "the settlement agreement should be enforced and that the testimony supports that this was the agreement that was reached." *Id.* at 19. Judge Sweeney then stated, "The Court finds that to be the case and the Court will require the parties execute the agreement within seven days of today's date." *Id.*

The parties dispute the impact of Judge Sweeney's oral ruling during the State Court Hearing on this Court's evaluation of the Settlement Agreement. The United Stated Court of Appeals for the Fourth Circuit has instructed that "the full faith and credit statute requires a federal court to apply state res judicata law in determining the preclusive effect of a state court judgment." *Meindl v. Genesys Pac. Tech., Inc. (In re Genesys Data Tech., Inc.)*, 204 F.3d 124, 129 (4th Cir. 2000) (citations omitted). *See also Shirazi v. Peninsula Internal Medicine, LLC*,

2010 WL 5173028, at *2 (citing *Meindl* for same proposition). The res judicata doctrine typically encompasses two separate, but related concepts—that of claim preclusion and issue preclusion. "Under Maryland law, the elements of res judicata, or claim preclusion, are: (1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute; (2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and, (3) that there has been a final judgment on the merits. … If a final judgment exists as to a controversy between parties, those parties and their privies are barred from relitigating any claim upon which the judgment is based." *Anne Arundel Cty. Bd. of Educ. v. Norville*, 887 A.2d 1029, 1037 (Md. 2005) (citations omitted). In addition, Maryland law recognizes issue preclusion "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Janes v. State*, 711 A.2d 1319, 1324 (Md. 1998).

Judge Sweeney's oral ruling concerning the existence of the Settlement Agreement and the Debtors' obligation to execute that agreement constitutes a decision on an issue of fact that was actually litigated by the parties. Judge Sweeney held an evidentiary issue on that precise issue, he made factual determinations based on the evidence, and both parties had an opportunity to litigate fully on that issue. The oral ruling was not, however, incorporated into a final judgment or otherwise noted as a judgment, final or otherwise, on the docket. Pl. Ex. 9. *See also, e.g.,* Md. Rule 2-601; *Scarborough v. Altstatt*, 140 A.3d 497, 501 (Md. Ct. Spec. App. 2016) (explaining requirements for final judgment under Maryland law). Thus, Judge Sweeney's oral ruling does not technically satisfy all of the required elements of claim or issue preclusion under Maryland law. *See, e.g., Snavely v. Miller (In re Miller)*, 397 F.3d 726, 729 (9th Cir. 2005)

(holding that, under Washington law, a state court's oral ruling that was not yet incorporated into final judgment was not a final judgment for purposes of res judicata and issue preclusion). The Court is unwilling, however, to ignore Judge Sweeney's ruling on the precise issue before it. Accordingly, the Court considers Judge Sweeney's ruling, which has been admitted into evidence in this matter, in the context of evaluating the Settlement Agreement under Maryland law.[4]

The Court has reviewed the evidence submitted during the November Hearing and considered Mr. Cho's testimony from the November Hearing and the State Court Hearing. Mr. Cho's testimony during these two hearings was consistent on a few key points: (i) Mr. Shin represented Mr. Cho in the State Court Action and the settlement conference before Judge Battaglia;[5] (ii) Mr. Cho knew something about the agreement reached at that settlement conference, though his recollection of it was more precise during the State Court Hearing;[6] and (iii) Mr. Cho never notified Mr. Shin or any other party that Mr. Shin was not authorized to act on Mr. Cho's behalf or to negotiate the Settlement Agreement.[7] The primary difference in Mr. Cho's testimony surrounds his recollection of the content of the Settlement Agreement and his participation or role in the settlement conference and State Court Hearing. Although the Court understands Mr. Cho's position concerning the Plaintiffs' allegations, the Court is

---

[4] The transcript of the State Court Hearing was marked as Plaintiffs' Exhibit 2 and admitted into evidence in its entirety during the November Hearing.

[5] State Court Hearing Transcript at 9–10; November Hearing Transcript at 33, 44–45.

[6] For example, during the State Court Action, Mr. Cho testified that he recognized the Settlement Agreement, that it memorialized the agreement reached during the settlement conference, and that he refused to sign it. State Court Hearing Transcript at 9–10. At the November Hearing, Mr. Cho denied recognizing the Settlement Agreement, denied understanding its contents, and denied ever agreeing to its terms. November Hearing Transcript at 33–34, 39–40, 44–45. Mr. Cho's basic posture at the November Hearing was that he did nothing wrong and should not have to pay anything. Notably, the Settlement Agreement acknowledged no finding of wrongdoing or liability on any party's part; Mr. Cho's testimony in this respect at the November Hearing went more to the merits of the underlying allegations and less to the facts and circumstances surrounding the settlement itself.

[7] November Hearing Transcript at 44–45.

persuaded by Mr. Cho's testimony before Judge Sweeney—a hearing in which Mr. Shin was present and represented (as well as questioned) Mr. Cho.[8]

For example, at the State Court Hearing, Plaintiffs' counsel asked, "Mr. Cho, the settlement agreement [marked as an exhibit and shown to Mr. Cho] memorialized the terms of the settlement that you had agreed to on April 13th, correct?" State Court Hearing Transcript at 10. Mr. Cho responded, "Yes." *Id.* Mr. Cho also testified that the non-disparagement provision was a material part of the agreement reached during the settlement conference. Mr. Shin specifically asked Mr. Cho, in reference to that provision, "[a]nd was this provision—or, was this agreement or understanding discussed in that settlement conference that we had with Judge Battaglia." *Id.* at 13. Mr. Cho responded, "Yes." *Id.*[9]

In *Barranco v. Barranco*, the Maryland Court of Special Appeals determined that an oral settlement agreement was enforceable where the party acknowledged that his attorney was his agent and that a general agreement on settlement had been reached during telephone conversations that occurred over the course of a day. 604 A.2d 931, 418–419 (Md. Ct. Spec.

---

[8] As set forth herein in notes 6 and 9, there are distinct variances in Mr. Cho's testimony at the State Court Hearing and the November Hearing. The primary difference is Mr. Cho's insistence at the November Hearing that he did not want or agree to settle the State Court Action; his basic position was that he did nothing wrong. See *infra* note 9. Because Mr. Cho did acknowledge during the November Hearing that he was present with his attorney, Mr. Shin, at the settlement conference, and that he did not inform anyone that Mr. Shin was not authorized to settle the State Court Action, the Court does not need to rely on any of the controverted testimony to reach its conclusion. The Court also observes that Mr. Cho appeared to have trouble with translations during the November Hearing, as some of the testimony is confused and disjointed. Unfortunately, unlike during the State Court Action, the Court did not have another Korean speaking individual present at the November Hearing (at the State Court Hearing, both Mr. Shin and the translator spoke Korean). The Court notes, however, that Mr. Cho's testimony at both the State Court Hearing and the November Hearing are now part of the record in these chapter 11 cases.

[9] At the November Hearing, in response to a question from his attorney regarding whether the parties reached "a framework of a settlement" during the settlement conference, Mr. Cho testified, "[n]o, we didn't agree." November Hearing Transcript at 33. When asked why he did not comply with Judge Sweeney's order, Mr. Cho responded, "[t]here—that is the side that is done—engaging in fraud, I didn't do anything that was fraudulent. That's the side that was calling for me to do things, and I did—I didn't do any fraud." *Id.* at 34. In response to Plaintiffs' counsel then asking Mr. Cho if he remembered being present at the settlement conference, Mr. Cho responded, "[y]eah, but I don't want to remember that." *Id.* at 43. Mr. Cho then testified that he did not remember the content of his testimony before Judge Sweeney. *Id.* at 44. Mr. Cho also did not directly answer the question concerning whether his counsel, Mr. Shin, lied when he told the Plaintiffs' counsel that Mr. Cho refused to attend the meeting with the landlord to facilitate aspects of the Settlement Agreement. *Id.* at 47.

App. 1992). The party contesting the agreement argued that certain terms had not been discussed during those conversations and that the agreement was subject to being reduced to a formal writing. The Maryland Court of Special Appeals rejected those arguments, observing that "[t]he oral agreement here was not a tentative agreement. It was not contingent upon a written agreement. It did not contemplate a written agreement to finalize terms not already finalized." *Id.* at 421. As that court explained, "[i]n this case, the Husband and Wife struck a deal. The Husband cannot admit the agreement under oath but disavow it because he had a change of heart." *Id.* The Maryland Court of Special Appeals affirmed the Circuit Court's order enforcing the settlement agreement. *Id.*

In this matter, Mr. Cho acknowledged the parties' agreement under oath in the State Court Hearing. Although his recollection concerning that testimony and the Settlement Agreement itself was foggy during the November Hearing, he did acknowledge that Mr. Shin was his counsel in the negotiation of the Settlement Agreement. *See, e.g., Hunt v, Schauerhamer*, 2016 WL 715797, at *5–*7 (D. Utah Feb. 22, 2016) (analyzing, among other things, the agency doctrines of actual and apparent authority in holding party was bound by attorney's agreement and enforcing settlement agreement) (applying Utah law). Based on the entirety of the record and the Court's observation of Mr. Cho's testimony during the November Hearing, the Court finds that the Plaintiffs and Mr. Cho did in fact reach an agreement, satisfying the required elements of mutual assent, for purposes on forming an enforceable contract under Maryland law. *See, e.g., Cochran v. Norkunas*, 919 A.2d 700, 708 (Md. 2007) ("It is universally accepted that a manifestation of mutual assent is an essential prerequisite to the creation or formation of a contract.") (citations omitted);[10] *Goss v. Bank of Am.*, 917 F. Supp.2d 445, 451 (D. Md. 2013)

---

[10] The Maryland Court of Appeals in *Cochran* did state that "[i]f the parties do not intend to be bound until a final agreement is executed, there is no contract." 919 A.2d at 708. The Court recognizes that the agreement reached

("Under Maryland law, implied contracts, like all contracts, require 'mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration.") (citations omitted). The decision of the Maryland Court of Special Appeals in *Barranco* and Judge Sweeney's oral ruling during the State Court Hearing further support this conclusion.[11] This result also accords with notions of comity[12] and judicial economy, particularly considering that parties relied on the state court process and the settlement conference in subsequent actions with respect to the litigation, the leasehold interest addressed in the Settlement Agreement, and other matters.[13]

The Court thus finds that, for the foregoing reasons, the Settlement Agreement represents the agreement reached by the parties and should be recognized as a valid and enforceable contract.

### B.    The Executory Nature of the Settlement Agreement

Having determined that the Settlement Agreement is in fact a valid and enforceable contract, the Court must determine whether that agreement constitutes an executory contract for purposes of section 365 of the Code. 11 U.S.C. § 365(g)(1). The Code does not define the term

---

[11] between the parties was not read into the record during the settlement conference as there was no reporter present, and the Settlement Agreement as written does not address the status of the agreement pending execution by both parties. In light of this, the Court takes note that Mr. Shin—Mr. Cho's counsel in the State Court Action—did not argue that a formal written agreement was a contingency to the validity or enforceability of the Settlement Agreement. Rather, Mr. Shin's argument suggested that the agreement, specifically the non-disparagement provision, was in fact enforceable. Based on the record, the parties reached an agreement on the material terms of the Settlement Agreement during the settlement conference. *See, e.g., Campbell v. Adkisson, Sherbert & Assocs.*, 546 Fed. Appx. 146, 152 (4th Cir. 2013) ("To enforce a settlement agreement under its inherent equity power, the district court '(1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions.'") (citations omitted). The record contains no evidence of any contingency to the enforcement of the agreement.

[11] Indeed, similar to the circumstances of *Barranco*, the Court finds that Mr. Cho has had a change of heart. That change may be based on how strenuously he now denies liability, but it does not change the fact that Mr. Cho, through his authorized agent Mr. Shin, agreed to the terms of the Settlement Agreement. Offer was made and accepted during the settlement conference. The record considered as a whole supports that conclusion.

[12] For a discussion of related principles of comity, see, e.g., *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 423 (2010) (discussing principles of comity); *Jaffe v. Accredited Surety and Casualty Co.*, 294 F.3d 584, 591 (4th Cir. 2002) (same); *Roberts v. Child*, 956 F. Supp. 923, 924 (D. Kan. 1997) (same).

[13] See Pl. Ex. 6 (stating actions taken by the Plaintiffs after the settlement conference with respect to the lease discussed in the Settlement Agreement).

"executory contract," and the issue of executoriness often plagues litigants and bankruptcy courts alike. *See, e.g., In re Roomstore, Inc.*, 473 B.R. 107, 110 (Bankr. E.D. Va. 2010) ("Commentators and courts have noted that the law of executory contracts is 'hopelessly convoluted' and a 'bramble filled thicket.'") (citations omitted). The underlying purpose of section 365 of the Code is to allow a debtor in possession, in its business judgment, to assume or reject contracts in order to aid the debtor's reorganization.[14] Consequently, the potential benefits and burdens of the subject contract should be the primary focus of any motion under section 365. Yet, the gating question of whether a contract is executory for purposes of that section appears, in many cases, to steal the spotlight and distract from the critical question of whether assumption or rejection benefits the estate and the debtor's reorganization efforts.[15] This matter is no different.

Courts generally apply one of two tests to evaluate whether a contract is executory for purposes of section 365 of the Code—the Countryman test and the Functional test.[16] The Fourth Circuit has adopted the Countryman test. "By that test, a contract is executory if the 'obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of

---

[14] *See, e.g.,* Jay L. Westbrook and Kelsi Stayart White, *The Demystification of Contracts in Bankruptcy*, 91 AM. BANKR. L.J. 481, 491–495 (2017) (explaining history and purpose of section 365 of the Code).

[15] For thoughtful and comprehensive discussions on executoriness and the status of the related debate, see Westbrook and White, *supra* note 14, at 493–496 (discussing the tests articulated *infra* note 16); American Bankruptcy Institute Commission to Study the Reform of Chapter 11, *Final Report and Recommendations*, 23 AM. BANKR. INST. L. REV. 1, 121–125 (2015).

[16] The Countryman test focuses on the executory nature of the contract, whereas the Functional test foregoes that consideration. Under the Countryman test, courts evaluate whether both parties have unperformed obligations under the contract, which if not performed would result in a material breach of the contract. *See* Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 MINN. L. REV. 439, 460 (1973). Under the Functional test, courts do not consider whether the contract is executory, but simply ask whether assumption or rejection of the contract provides a benefit to the estate. *See* Jay L. Westbrook, *A Functional Analysis of Executory Contracts*, 74 MINN. L. REV. 227, 282–85 (1989). In addition, although not generally adopted by courts as an alternative to the Countryman test, several courts have relied on the "exclusionary approach" described by Professor Michael Andrew in his work on executory contracts. *See* Michael T. Andrew, *Executory Contracts in Bankruptcy: Understanding "Rejection,"* 59 U. COLO. L. REV. 845 (1988); Michael T. Andrew, *Executory Contracts Revisited: A Reply to Professor Westbrook*, 62 U. COLO. L. REV. 1 (1991). *See also In re Alongi*, 272 B.R. 148, 153–155 (Bankr. D. Md. 2001) (citing Professor Andrew's work).

either to complete the performance would constitute a material breach excusing the performance of the other.'" *Lubrizol*, 756 F.2d at 1045 (citations omitted). The Countryman test requires unperformed obligations on the part of both parties to the contract, and a breach of any those obligations must be material in the sense that it would allow the non-breaching party to rescind, or cease performing under, the contract under applicable nonbankruptcy law.

What constitutes an unperformed obligation and whether a breach of that obligation is material or trivial are often contested by the parties and interposed as a barrier to the relief requested under section 365. For example, in this matter, the Plaintiffs assert that they have no remaining unperformed obligations under the Settlement Agreement and that, to the extent any obligations do remain on their part, they are trivial or ministerial in nature. The Debtors dispute this characterization of the parties' respective obligations under the Settlement Agreement. Before the Court can consider the Debtors' request to reject the Settlement Agreement, it must first resolve the parties' disagreement concerning the nature of their unperformed obligations under the agreement.

Maryland law governs the Settlement Agreement. Settlement Agreement, Pl. Ex. 8 § 10(f). Maryland courts have observed that "[s]ettlement agreements are enforceable as independent contracts, subject to the same general rules of construction that apply to other contracts." *Maslow v. Vanguri*, 896 A.2d 408, 419 (Md. Ct. Spec. App. 2005). Under Maryland law, "'[a]lthough any breach of contract may give rise to a cause of action for damages, only a *material breach* discharges the non-breaching party of its duty to perform.'" *CytImmune Scis., Inc. v. Paciotti*, 2016 WL 3218726, at *3 (D. Md. June 10, 2016) (quoting *Jay Dee/Mole Joint Venture*, 725 F. Supp. 2d at 526 (citing Restatement (Second) of Contracts § 236 cmt. a.; 23 Williston on Contracts § 63:3 (4th ed.))) (emphasis in original). Maryland law provides that "'[a]

13

breach is material "if it affects the purpose of the contract in an important or vital way.""" *CytImmune Scis.*, 2016 WL 3218726, at *3 (citations omitted). *See also Maslow*, 896 A.2d at 423 (explaining material breach as occurring "when 'the act failed to be performed [goes] to the root of the contract or … render[s] the performance of the rest of the contract a thing different in substance from that which was contracted for.'") (citing *Taylor v. Grafton*, 332 A.2d 651, 674 (Md. 1975)).

Neither party disputes that the Debtors have unperformed, material obligations under the Settlement Agreement. Indeed, the Debtors must, among other things, transfer the dry-cleaning business, make a cash payment, and not interfere in the Plaintiffs' operation of the business. Settlement Agreement, Pl. Ex. 8 §§ 2.1, 4.3. The parties do not agree on the nature of the Plaintiffs' unperformed obligations. These obligations include: (i) authorizing their counsel "to file a Stipulation of Dismissal with the Circuit Court for Howard County, dismissing the Lawsuit"; and (ii) dismissing "their action pending against [Ms. Paik] in the United States Bankruptcy Court for the District of Maryland, Case No. 16-10260-DER, Adversary No. 16-00362, and note the judgment held against [Ms. Paik] in the Circuit Court for Baltimore City, Case No. 24-C-14-004134, as satisfied." *Id.* at §§ 2.2, 3.2. Both of the foregoing obligations are triggered once the Debtors have, among other things, transferred the business and made the cash payment, neither of which has been done. *Id.* In addition, the Plaintiffs and the Debtors have an ongoing obligation "not to make any public statements, whether written or oral, or any other statements which the Parties reasonably believe are likely to become public, which could reasonably be interpreted, under the circumstances, as embarrassing, disparaging, prejudicial, or in any way detrimental to the interests of the other" parties. Settlement Agreement § 4.1.

Both parties thus unquestionably have unperformed obligations under the Settlement Agreement. The question then becomes whether these obligations—particularly the Plaintiffs' unperformed obligations—are material under Maryland law. This question turns, in part, on the primary purpose of the contract. *See, e.g., CytImmune Scis.*, 2016 WL 3218726, at *3; *Maslow*, 896 A.2d at 423. Here, the parties entered into the Settlement Agreement to resolve all of the outstanding disputes between them concerning the dry-cleaning business, including those involving Ms. Paik. Settlement Agreement, Pl. Ex. 8 ¶ E, § 3.2. Although the Plaintiffs are understandably focused on the Debtors' obligations under section 2.1 of the Settlement Agreement and the transfer of the business and cash, those actions were not the only or primary purpose of the agreement considering the interests of all affected parties. Rather, the Plaintiffs' obligations to dismiss the pending litigation against the Debtors, to dismiss the pending litigation against Ms. Paik, and to note satisfaction in full of the judgment they hold against Ms. Paik speak directly to the primary purpose of settling the litigation and providing finality and certainty for the parties. Likewise, the non-disparagement provision bolsters and serves this purpose.

At the January Hearing, the Plaintiffs emphasized the non-contingent nature of the releases granted by the parties under the Settlement Agreement and that the releases were performed simultaneously with the Settlement Agreement becoming effective. That argument does not, however, eliminate the parties' independent obligation to dismiss the State Court Action.[17] Perhaps more importantly, the releases in the Settlement Agreement speak only to the claims involving the Plaintiffs and the Debtors. The releases do not address the claims that the

---

[17] Although most courts characterize releases as material, courts differ in approaches to obligations relating to dismissal. Some suggest that such obligations might be ministerial, while other courts take a more holistic approach to analyzing the obligations at issue. *See, e.g., Schultz v. Verizon Wireless Services*, 833 F.3d 975, 979 (8th Cir. 2016) ("The form of the release and dismissal order is a material part of any settlement. Verizon considered the inclusion of a mutual non-disparagement clause to be an essential part of the release. Negotiations broke down when the Schultzes refused to agree to that term, conclusively establishing that it *was* a substantial matter.") (emphasis in original).

Plaintiffs assert against Ms. Paik. Those claims are addressed separately in section 3.2—a section that imposes on the Plaintiffs both an obligation to dismiss an action, and an obligation to acknowledge the satisfaction of certain claims, against Ms. Paik. If the Plaintiffs do not perform such obligations, the Plaintiffs' litigation and claims remain, they are not barred by any release provision, and the remedy is a claim for breach of the Settlement Agreement. As noted above, the purpose of the Settlement Agreement was to resolve these kinds of issues. The failure of the Plaintiffs to perform under section 3.2 of the Settlement Agreement is a material breach, and a breach that could be enforced by the Debtors as the direct parties to the agreement. *See, e.g., Kaplan v. First Options of Chicago, Inc. (In re Kaplan)*, 143 F.3d 807, 813 (3d Cir. 1998) (explaining that "since [the debtor] is a direct party to the Agreement, he has standing to sue for the breach of First Options' commitment to provide services to [the third-party beneficiary]").

Moreover, although some courts disagree, several courts have held that, in the settlement context, a non-disparagement provision is a material term of the settlement agreement.[18] *See, e.g., Higbee v. Sentry Insurance Co.*, 253 F.3d 994, 998 (7th Cir. 2001) (finding no enforceable settlement agreement because "material" terms were not agreed upon, and explaining that "the wording of the confidentiality and nondisparagement clause was a material term, at least as far as Higbee was concerned"); *Moreno v. Tringali*, 2017 WL 2779746, at *4–*9 (D. N.J. June 27, 2017) (finding a material breach of a litigation settlement agreement where evidence established

---

[18] Although the Debtor testified concerning the materiality of the non-disparagement provision during the State Court Hearing, the Court did not consider that testimony in the context of evaluating the materiality of the provision for purposes of the Code. Maryland courts follow the objective approach to interpreting contract, unless the contract is ambiguous. *See, e.g., Maslow v. Vanguri*, 896 A.2d 408, 420 (Md. Ct. Spec. App. 2006) ("To ascertain the parties' intent, courts in Maryland 'have long adhered to the objective theory of contract interpretation, giving effect to the clear terms of agreements, regardless of the intent of the parties at the time of contract formation.'") (citations omitted); *Geoghehan v. Grant*, 2011 WL 673779, at *6 (D. Md. Feb. 17, 2011). No party has argued that the Settlement Agreement is ambiguous. Accordingly, the Court considers only the plain language of the Settlement Agreement in making its determination. In addition, although the Debtors raised a violation of the non-disparagement provision during the State Court Hearing, Judge Sweeney was not asked to, and did not rule on, the materiality of, or a breach concerning, the non-disparagement provision.

that party violated non-disparagement provision). *See also Schultz*, 833 F.3d at 979. This approach is consistent with the core purpose of most litigation settlement agreements—i.e., the agreements are intended to provide finality and allow the parties to walk away from the litigation without findings of liability or other adverse consequences, such as negative comments and connotations from the adverse party or the fact that litigation was pending. *See, e.g., Moreno*, 2017 WL 277974, at *8 ("Under their Settlement Agreement, the parties exchanged material promises and received assurances not just to be free from what the law already protects them from—i.e., defamation—but for significantly broader relief from 'any disparaging remarks' and even 'any' remarks that 'cast any such Party in a negative light.'"). Although the Court did not find any Maryland case law directly on point, and the parties did not cite any, the Court is persuaded that under the circumstances of these cases and considering the purpose of a litigation settlement agreement, the non-disparagement provision is material and serves the core purpose of the Settlement Agreement. *See, e.g., Maslow*, 896 A.2d at 423 ("[W]e agree with appellee that the 'no appeals' provision was a central element of the Agreement, and appellant's appeal of the jury's verdict constituted a material, 'substantial breach tending to defeat the object of the contract.'") (quoting *Vincent v. Palmer*, 19 A.2d 183, 188 (Md. 1941)); *Convenience Retailing, LLC v. Sunoco, Inc.*, 2006 WL 3797927, at *2 (4th Cir. Dec. 21, 2006) (per curiam) (holding that facilities allowance fee included in reseller agreement was material and explaining that "[i]t is only when 'a covenant goes only to part of a contract, is incidental and subordinate to its main purpose and its breach may be compensated in damages' that a breach 'does not warrant rescission of the contract but compensation in damages.'") (quoting *Taylor*, 332 A.2d at 674).[19]

---

[19] *See also McClain & Co. v. Carucci*, 2011 WL 1706810, at *8 (W.D. Va. May 4, 2011) (suggesting that a noncompete covenant that was only part of a much larger agreement could constitute a material breach because "it 'deprive[s] the injured party of the benefit that the party justifiably expected from the exchange'") (citations omitted).

In the bankruptcy context, several courts have held that negative obligations and obligations to refrain from taking certain actions are material and sufficient to render a contract executory when those obligations serve the underlying purpose of the contract at issue. Notably, some of these obligations to refrain are similar to not only the non-disparagement provision in the Settlement Agreement, but also to the Plaintiffs' affirmative obligation to act on certain pending litigation. For example, the court in *In re WorldCom, Inc.* found an obligation to refrain from challenging a state court consent judgment in the context of a settlement agreement material under section 365 of the Code. 343 B.R. 486, 496 (Bankr. S.D.N.Y. 2006). As that court explained, "'[e]ach performance goes to the essence of what the other party sought and expected when he entered into the … Agreement, and without it, the party will lose the benefit of the bargain that he thought he struck.'" *Id.* at 496–497 (quoting *In re Teligent, Inc.*, 268 B.R. 723, 730–731 (Bankr. S.D.N.Y. 2001)). Likewise, in *Alpha Natural Resources*, the court determined that the agreement was executory because "the Debtors have a material obligation to tender the Payment Obligations" and "[b]oth parties also have a material obligation to refrain from bringing the underlying claims that the Agreement purported to resolve.'" 555 B.R. at 525 n.8. *See also, e.g., Lubrizol*, 756 F.2d at 1045 ("The unperformed, continuing core obligations of notice and forbearance in licensing made the contract executory as to RMF."); *RCI Tech. Corp. v. Sunterra Corp. (In re Sunterra Corp.)*, 361 F.3d 257, 264 (4th Cir. 2004) (finding contract executory where each party "possessed an ongoing obligation to maintain the confidentiality of the source code of the software developed by the other"); *Roomstore*, 473 B.R. at 114 (explaining that "continuing duties of the parties" to a contract can make the contract executory); *In re Spoverlook, LLC*, 551 B.R. 481, 486–487 (Bankr. D.N.M. 2016) (finding contingent obligation to release claims to be material).[20]

---

[20] The parties discussed the *Spoverlook* case in their post-hearing briefs, given the factual similarities between that

The Court acknowledges that some courts have found negative covenants insufficient to render a contract executory for purposes of the Code. *See, e.g., Ready Productions, Inc. v. Jarvis (In re Jarvis)*, 2005 WL 758805, at *4 (Bankr. D.N.H. Mar. 28, 2005) (discussing non-disparagement agreements); *In re Schneeweiss*, 233 B.R. 28, 31–32 (Bankr. N.D.N.Y. 1998) (discussing covenant not to compete). Although the Court appreciates the analysis included in these decisions, it respectfully declines to follow their guidance based on the facts and circumstances of this particular matter. In addition, as noted by the court in *WorldCom*, at least some of these decisions "base their ruling upon the argument that restrictive covenants create passive and not affirmative obligations on the part of the party being held to them, and that such passive obligations do not [] rise to the level of materiality necessary for an executory contract to exist." 343 B.R. at 496. The court then observed that "applying these arguments to this case would inherently place form over substance." *Id.* This Court agrees.

Every decision concerning whether a contract is executory must be made on the facts of the particular case and the standards set forth in the applicable nonbankruptcy law. Having analyzed the terms of the Settlement Agreement, considered the testimony of Mr. Cho at the November Hearing and the State Court Hearing, and reviewed applicable Maryland law, the Court finds that the Settlement Agreement is an executory contract under the Countryman test. Both parties to the Settlement Agreement have unperformed and, in some instances, ongoing obligations that, if not performed, would eviscerate the benefit of the bargain for the non-

---

case and the matter before the Court. The two settlement agreements have similar terms, but the release provision in *Spoverlook* was contingent on the debtor's performance of certain obligations. 551 B.R. at 486. Under the Settlement Agreement, the release provision appears to have been operative upon execution of the agreement. Pl. Ex. 8. The court in *Spoverlook* found the release obligation (though self-executing) to be material under the facts of that case and, thus, did not address the other remaining obligation, which was an obligation to dismiss the underlying state court action. *Id.* at 487. The court did, however, suggest that "[i]f the HOA's only remaining obligation were to dismiss the state court action, then it might not be significant." *Id.* The Court acknowledges this statement in *Spoverlook*, but reaches a different conclusion based on all of the provisions in the Settlement Agreement, the primary purpose of the parties entering into the Settlement Agreement, and the applicable nonbankruptcy law in this case.

breaching party. Accordingly, the Debtors may seek to reject the Settlement Agreement under section 365 of the Code.

## C.  The Rejection of the Settlement Agreement

As explained above, section 365(a) of the Code permits a debtor in possession, after notice and a hearing, to reject an executory contract, if such rejection is advantageous to the estate. "Courts addressing that question must start with the proposition that the bankrupt's decision upon it is to be accorded the deference mandated by the sound business judgment rule as generally applied by courts to discretionary actions or decisions of corporate directors." *Lubrizol*, 756 F.2d at 1046. In these cases, the Debtors have asserted that the Settlement Agreement is onerous and, actually, counterproductive to the Debtors' reorganization efforts. The terms of the Settlement Agreement require, among other things, the transfer of a business operated by the Debtors and a cash payment from the Debtors to two specific creditors in these cases on account of alleged prepetition claims. The Court appreciates the frustration articulated by the Plaintiffs in that they believe they hold valid claims against the Debtors and that they had, in good faith, reached a settlement of those claims prior to the filing of the Debtors' chapter 11 petitions. The Plaintiffs are not, however, the only creditors in these cases,[21] and the Court must consider the interests of the estates in the context of the Debtors' request to reject the Settlement Agreement.

On balance, the Court finds that the record supports the Debtors' business judgment and their request to reject the Settlement Agreement. The Plaintiffs made various references to the Debtors' alleged fraudulent conduct and bad faith in filing these chapter 11 cases. They did not, however, present any evidence beyond the facial allegations asserted in the State Court Action

---

[21] Notably, these chapter 11 cases do not only involve a two-party dispute. The Debtors have at least three secured creditors, including secured claims asserted by Columbia Bank and PNC Bank, at least two general unsecured creditors (not including the Plaintiffs), and a landlord. [ECF 1 Case No. 17-22057; ECF 1 in Case No. 17-22058].

and the fact the Debtors filed these cases shortly before the hearing on the Show Cause Petition. The filing of a bankruptcy petition stops most prepetition litigation. That fact alone does not establish bad faith, particularly where the debtor has, as here, articulated a valid purpose to be served by the bankruptcy filing.[22] *See, e.g., Carolin Corp. v. Miller*, 886 F.2d 693, 700 (4th Cir. 1989) (setting forth test to evaluate alleged bad faith filings that places burden on party opposing bankruptcy and requires a showing of both objective futility and subjective bad faith); *In re Greenwood Supply Co*., 295 B.R. 787, 794 (Bankr. D. S.C. 2002) (explaining, among other things, that subjective bad faith is a totality of circumstances test, of which a bankruptcy filing to stop state court litigation is only one factor). Moreover, the Plaintiffs did not suggest or provide any evidence to suggest fraud or bad faith in the Debtors' request to reject the Settlement Agreement, other than it is an effort to get out from under a deal the Debtors now do not like. Such motivation, however, often underlies a debtor's request to reject an executory contract or unexpired lease in a bankruptcy case.

That said, the Court does not condone fraudulent conduct or bad faith filings. The protections of the Code are reserved for the "'honest but unfortunate'" debtor. *See, e.g., Brown v. Felsen*, 442 U.S. 127, 128 (1979) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)). And the Court is mindful that, in administering bankruptcy cases, "courts should be 'equally concerned with ensuring that perpetrators of fraud are not allowed to hide behind the skirts of the Bankruptcy Code.'" *Twin City Fire Ins. Co. v. Estrin (In re Estrin)*, 2016 WL 691506, at *7 (Bankr. D.S.C. Feb. 19, 2016) (quoting *Taylor v. Davis (In re Davis)*, 494 B.R. 842, 867 (Bankr. D.S.C. 2013) and *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999)).

---

[22] The Court's findings regarding fraud and bad faith are limited to evaluating the Motion and the Debtors' business judgment in that context.

Nevertheless, on the record before it, the Court finds no bad faith in connection with the Debtors' request to reject the Settlement Agreement.

In addition, rejection of the Settlement Agreement simply means that Debtors are relieved of performing their obligations under that agreement. Rejection is a breach of the Settlement Agreement by the Debtors, deemed to occur immediately before the petition date. *See, e.g.,* 11 U.S.C. § 365(g); *Lubrizol*, 756 F.2d at 1048. Rejection generally does not eviscerate the non-breaching party's state law rights under the contract.

Although the non-breaching party may be limited to a damages claim against the estate under sections 365(g) and 502(g) of the Code,[23] the Court is not by this Order addressing the parties' respective rights upon breach, the amount of any claim resulting from breach, or the treatment of the any claim in these chapter 11 cases.[24] Notably, any nonbankruptcy rights that the Plaintiffs may retain do not include the right to request specific performance of the Settlement Agreement.[25] *See, e.g., Newman Grill Sys., LLC v. Ducane Gas Grills, Inc.*, 320 B.R. 324, 337

---

[23] *See, e.g., Lubrizol*, 756 F.2d 1043, 1048 ("Even though § 365(g) treats rejection as a breach, the legislative history of § 365(g) makes clear that the purpose of the provision is to provide only a damages remedy for the non-bankrupt party.").

[24] For example, in the *Spoverlook* case cited above (551 B.R. 481), the bankruptcy case ultimately was dismissed and, in granting that dismissal, Judge Thuma explained, "Debtor's rejection of the Agreement was a breach of contract, and will continue to be so after dismissal of the case. … Dismissal of this case therefore leaves the HOA and Debtor much like they were before the bankruptcy case was filed. … The HOA can seek to enforce the Agreement as before. The HOA's specific performance and other remedies, which were potentially curtailed in bankruptcy, remain available in state court, the same as if the bankruptcy case had never been filed." *In re Spoverlook*, 2017 WL 3084898, at *2 (Bankr. D. New Mexico Jan. 4, 2017).

[25] The issue of specific performance could be viewed as one difference between rejection of the Settlement Agreement as an executory contract or characterization of that agreement as non-executory and subject to breach by the Debtors. In the latter instance, the Plaintiffs' monetary claims would still constitute prepetition claims because the Settlement Agreement was agreed upon prepetition. *See, e.g., Spoverlook*, 551 B.R. at 487 (citing *In re Hawker Beechcraft*, 486 B.R. 264, 276–277 (Bankr. S.D.N.Y. 2013) for the proposition that "rejection of an executory contract is the economic equivalent of the debtor's refusal to perform a non-executory contract, giving rise to the same unsecured claim). The Plaintiffs may believe that, in the non-executory context, they could at least argue a claim for specific performance. The success of that claim is, however, speculative at best considering the broad definition of "claim" under section 101(5) of the Code, which includes equitable relief, and the fact that monetary damages could compensate the Plaintiffs for any losses. 11 U.S.C. § 101(5)(B). Indeed, under Maryland law, the remedy of specific performance is rare, often reserved for transfers of real property (which this is not), and only available where, among other things, the requesting party has performed all of its obligations under the agreement.

(Bankr. D. S.C. 2004) ("Plaintiffs are not entitled to claim specific performance as a method of relief from Ducane's rejection of executory contracts in light of 11 U.S.C. § 365(g) ...."). *See also* Lubrizol, 756 F.2d at 1048. Accordingly, the Court reserves judgment on these and related issues pending further action by the parties in these chapter 11 cases.

### IV.     Conclusion

For the reasons set forth above, the Court concludes that the parties agreed to the terms of the Settlement Agreement prior to the petition date, the Settlement Agreement is an executory contract for purposes of section 365 of the Code, and the Debtors may reject the Settlement Agreement under section 365(a) of the Code. The Court will enter a separate order consistent with, and granting the relief set forth in, this Memorandum Opinion.

cc:     Byung Mook Cho
        The New Belvedere Cleaners
        Michael S. Myers
        Young Jun Jun
        Hee Sook Paik
        Christopher S. Young
        U.S. Trustee

### END OF MEMORANDUM OPINION

---

*See, e.g., Cattail Assoc., Inc. v. Sass*, 907 A.2d 828, 843 (Md. Ct. Spec. App. 2006); *Geoghegan v. Grant*, 2011 WL 673779, at *9 (D. Md. Feb. 17, 2011).